[No. 5033.]
[No. 2590 C. A.]

The Colorado & Southern Railway Company v. Webb.

1.  **Railroads—Damages—Killing Stock—Evidence.**

In an action against a railroad company for killing a horse, there was no prejudicial error in permitting a witness, without qualifying as an expert concerning the market value of horses in that vicinity, to testify as to the quality, and not the money value, of plaintiff's horse where other competent witnesses on the subject of values showed the horse to be worth as much as, or more than, that returned by the jury.—P. 226.

2.  **Same—Killing Stock—Negligence—Evidence.**

In an action against a railroad company for killing a horse, the negligence relied on by plaintiff being the failure of defendant's servants to make any effort to stop the train before colliding with the horse, as claimed might have been done by the use of reasonable care, evidence that the train was late and was running at the rate of twenty-five miles an hour, the jury being properly instructed that such facts did not constitute proof of negligence, was admissible as throwing light, in connection with other evidence in the case, upon the particular acts of negligence on which, it seems, plaintiff relied.—P. 226.

3.  **Same—Damages—Evidence—Speed of Train.**

In an action against a railroad company for killing a horse, the court did not err in permitting a witness, who was not an

expert, to testify to the speed of the train, as one of ordinary experience familiar with trains and possessed of a knowledge of time and distance without being skilled in handling trains, is a competent witness as to the velocity. That he was not an expert goes to the weight of his testimony.—P. 227.

4. Same—Killing Stock—Negligence—Evidence—Sufficiency.

The question on review is not as to the weight of the evidence, or whether the facts were detailed correctly by the trainmen or by plaintiff's witnesses, as the credibility of the witnesses and the weight of evidence were for the jury; but there was evidence tending to show that the trainmen made no effort to stop the train, and because of such neglect the injury occurred; in other words, the evidence before the jury was legally sufficient to sustain the verdict, though were we the triers of the fact, we might not agree with their decision.—P. 228.

5. Same—Trial—Instructions—Failure to Request—Error Cured by Other Instructions—Nondirection.

In an action against a railroad company for killing a horse, at plaintiff's request, the jury were instructed that if defendant through its negligence, or that of its servants, killed the horse, they should find for plaintiff. No instruction was given, or requested, defining negligence, but at request of defendant the jury were told that the burden was on the plaintiff to establish that the death of the horse resulted from the failure of the defendant's employees to exercise ordinary care to stop the train, so that defendant was not prejudiced by the omission, for while negligence was not defined, the jury were instructed as to the care, which is the antithesis of negligence, that the defendant was bound to exercise; and the omission from the first instruction of the necessary statement that the negligence, if established, must have been the proximate cause of the injury, was nevertheless inserted in the later instructions, and hence the alleged error was cured, for at most, such alleged error consisted of nondirection, and not misdirection.—P. 228.

6. Same—Trial—Instructions not Based on Evidence—Degrees of Negligence.

In an action against a railroad company for killing a horse, it was proper to refuse to instruct on contributory negligence, where there was no evidence supporting it; nor would it have been proper to have instructed that the defendant must have been guilty of gross negligence, as the doctrine of degrees of negligence, such as slight and gross, does not prevail in this jurisdiction.—P. 230.

*Appeal from the County Court of Summit County.
Hon. William Thomas, Judge.*

Action by George D. Webb against The Colorado and Southern Railway Company. From a judgment in favor of the plaintiff, defendant appeals.

*Affirmed.*

Messrs. Dines & Whitted, and Mr. J. G. McMurry, for appellant.

Mr. James T. Hogan, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

Action for damages to recover the value of plaintiff's horse, which was run over and killed by defendant's railway train, as he says, through negligent operation thereof by its servants. From a judgment for plaintiff, defendant appeals.

1. There is no merit in the assignments of error based upon the rulings on evidence. That plaintiff's witness, without qualifying himself as an expert concerning the market value of horses in that vicinity, testified as to the quality, and not the money value, of plaintiff's horse, was not prejudicial error. Other competent witnesses on the subject of value showed the horse to be worth as much as, or more than, that returned by the jury. Plaintiff's testimony as to the lateness, and rate of speed, of the train at the time of the accident was properly admitted. It is true that the mere fact that the train was late, or that it was at the time running at the rate of twenty-five miles an hour, or both together, are not proof of negligence, and the jury were so instructed at defendant's request; yet this testimony was admissible as throwing light, in connection with other evidence in the case, upon the particular acts of negligence on which, it seems, plaintiff relied. This was the failure

by defendant's servants to make any effort to stop the train before colliding with the horse, which might have been avoided had reasonable care been used. This we gather from an examination of the proceedings of the trial, for there were no written pleadings, the action having originated in the court of a justice of the peace.

Neither did the court err in permitting a witness, who was not an expert, to testify as to the speed of the train. That he was not an expert goes to the weight of his testimony. But one of ordinary experience, familiar with trains, and possessed of a knowledge of time and distance, without being skilled in handling trains, is a competent witness as to the velocity of their movement.—D. & M..R. R. Co. v. Van Steinburg, 17 Mich. 99; Chipman v. U. P. R. R. Co., 12 Utah 68; C. B. & Q. R. R. Co. v. Gunderson, 174 Ill. 495.

2.   The most serious question in the case concerns the legal sufficiency of the evidence to establish negligence.   Briefly, the facts are that plaintiff's horse was standing in a lot, in the town of Breckenridge, belonging to Mrs. Louage—which was adjoining, or close to, defendant's railroad track—when one of its passenger trains was approaching.  Shortly before reaching this lot, and before the train began to round a curve, the whistle of the engine, according to the usual custom, was blown, which frightened the horse.   The animal at once started toward the track, and, while attempting to cross it, or to run down the track, was struck by the engine, thrown upon the cow catcher, and carried for several hundred feet before the train was stopped.   There was testimony by plaintiff's witnesses that after the whistle was sounded as the train began to round the curve, and after the engineer saw, or by the exercise of ordinary diligence might have seen, the horse run-

ning towards or down the track, no effort whatever was made by the trainmen to stop the train before the horse was struck, which might have been accomplished had the usual and ordinary means been resorted to. It is true that the fireman and engineer say that as soon as the horse was visible from the engine, the engineer, though he did not have time to blow the whistle, reversed the engine and applied the air brakes, and thus sought by every means within his power to avoid striking the horse, which he could not prevent.

The question with us, however, is not as to the weight of the evidence, or whether the facts are detailed correctly by the trainmen or by plaintiff's witnesses. The credibility of the witnesses and weight of evidence were for the jury. It is sufficient to say that there was evidence tending to show that the trainmen made no effort to stop the train, and because of such neglect the injury occurred. In other words, the evidence before the jury was legally sufficient to sustain the verdict, though were we the triers of fact, we might not agree with their decision. . If, therefore, there was no error of the court in its instructions, or in the admission of testimony, this verdict must stand. As already stated, we find no prejudicial error in the ruling of the court upon the evidence.

3. Defendant, however, insists that there was prejudicial error of the trial court in the giving of certain instructions for plaintiff, and in refusing to give others requested by it. In the first instruction, given at plaintiff's instance, the jury were told that if the defendant, through its negligence or that of its servants, killed plaintiff's horse, they should find for plaintiff. The defendant's sole objection to this instruction at the time was that the meaning of "negligence" was not stated. That objection is now

renewed. There was no definition of negligence in this, or any other, instruction. Although defendant made request for other instructions, it tendered none on this point. In view of its own failure in this respect, and the additional fact that in an instruction, given by the court at its request, the jury were told that the burden was on the plaintiff to establish by a preponderance of evidence that the death of plaintiff's horse resulted from the failure of defendant's employees after they saw, or by the exercise of reasonable care might have seen, that the horse was in danger, to exercise ordinary care to stop the train and to take all other proper means to prevent injuring or killing the horse, certainly defendant was not prejudiced by the omission noted. While "negligence" was not defined, the jury were instructed what duty the law imposed upon a defendant in the circumstances of the case. The antithesis of negligence, which is care, the jury were thus told the defendant was bound to exercise, and that such care was ordinary care.

4. An additional ground now urged against this instruction is that it did not tell the jury that, if the negligence was established, it must have been the proximate cause of the injury. The omission of this necessary element, which the court might well have supplied in the instruction which it tendered at plaintiff's request, was nevertheless inserted in the instruction which was given on defendant's motion which we have above summarized; hence the alleged error, for the first time here assigned, was cured. At most, the alleged error consisted of nondirection, not misdirection.—11 Am. & Eng. Enc. Law (1st ed.) 258 *et seq.* and cases cited; *Mut. Life Ins. Co. v. Snyder*, 93 U. S. 393; *Denver Tramway Co. v. Lassasso*, 22 Colo. 444; *Ruby Chief M. & M. Co. v. Pren-*

*tice*, 25 Colo. 4; *City of Denver v. Moewes*, 15 Colo. App. 28.

5.   There was no error in failing to charge the jury that, if plaintiff's negligence contributed to the injury, it defeated his recovery.   There was no evidence of his contributory negligence, and an instruction thereupon would have been inapplicable.

6.   A number of instructions, varying in form, were tendered by defendant, in which the jury were told to find in its favor because no case had been made out.   These were properly refused.   In other instructions tendered by defendant and refused by the court, an effort was made to have the jury instructed that, unless the evidence showed that defendant had been guilty of *gross* negligence, in no event could plaintiff recover.   Such instructions were based upon an ordinance of the town of Breckenridge, introduced in evidence, one section of which provided that whoever shall permit any horse owned by him to run at large and become a nuisance within the limits of the town shall, upon conviction, be fined in a sum not exceeding one hundred dollars.   In the first place, this court, by repeated decisions, has held that the doctrine of degrees of negligence, such as slight and gross, does not prevail in this jurisdiction; hence the instruction with respect to gross negligence was for this reason alone properly denied. If, however, the defendant had sought to have applied the rule that where animals are, by statute or ordinance, prohibited from running at large within a municipality, a railway company cannot be held liable for injury thereto in the operation of its trains within such limits, except under a state of facts which show that its servants are guilty of willful negligence, or are unmindful of, or utterly indifferent to, the consequences of their acts, the instruction should have been refused, because there is no evidence that

the horse was allowed or permitted by its owner to run at large, or that it was, in fact, at the time running at large, or had become a public nuisance within the meaning of the ordinance. The horse, it is true, was upon a lot, whether enclosed or not the record fails to show, belonging to one other than the owner of the animal, but there is not a particle of evidence that the horse was running at large either with, or without, the owner's permission, or that it had become a public nuisance. For aught the evidence discloses to the contrary, it was lawfully on the premises of Mrs. Louage, and was not running at large.

Considering the entire record, we cannot, under the doctrine prevailing in this jurisdiction, reverse this judgment on any of the grounds urged upon us. The judgment is affirmed.    ·    *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.