MR. JUSTICE DALY
delivered the opinion of the Court.
This is an appeal from a final judgment entered in the District Court of the Fourth Judicial District, Missoula County.
State Farm Mutual filed a motion to dismiss Count III of the complaint, which named it as defendant, for failure to state a claim on which relief could be granted. The Dis *249 trict Court granted this motion and entered final judgment on May 25, 1982, pursuant to Rule 54(b) M.R.Civ.P. The court used the language contained in the rule in its judgment and stated “the Court, pursuant to Rule 54(b) M.R.Civ.P., having expressly determined that there is no just reason for delay in entering final judgment on said Count III.” Thus, correctly certifying the issue to this Court. The failure of the District Court to provide its reasons for certification until after the notice of appeal was filed does not render the certification defective as long as the guidelines in Rule 54(b) M.R.Civ.P. have been complied with. Therefore, our previous contrary holding in Churchill v. Holly Sugar Corp. 1981, Mont., 629 P.2d 758, 38 St.Rep. 860, that no supplemental findings can be considered after notice of appeal is filed is overruled.
As both sides have aptly stated in their briefs, when considering a motion to dismiss, the material allegations of the pleading attacked are taken as true. Pelton v. Markegard (1978), 179 Mont. 102, 586 P.2d 306. Based on this rule the facts of this case seem to be:
1. That Neil Klaudt is the personal representative of the decedent, Scott A. Klaudt, and Neil and Caryl Klaudt are the parents of the decedent.
2. That the defendant, insured, Calvin Flink, was driving his car in which the decedent was a passenger, at a high rate of speed and rolled it on Mullen Road west of Missoula.
3. That the decedent was thrown from the vehicle and suffered injuries causing his death.
4. That the decedent was eighteen at the time of his death.
5. That following the accident defendant, Flink, admitted responsibility for his acts in operating the vehicle.
6. That State Farm was defendant Flink’s insurer at the time of the accident.
7. That Flink was intoxicated at the time of said accident, and later pleaded guilty to a reckless driving charge arising out of the accident.
*250 8. That State Farm has denied liability and has refused to negotiate.
The sole issue presented by this appeal is whether the Montana Unfair Trade Practices section of the Insurance Code, specifically section 33-18-201(6), MCA, gives the plaintiffs a cause of action against a defendant’s insurer, which can be prosecuted jointly with an action against the defendant insured?
This is a case of first impression in our jurisdiction, and centers around whether section 33-18-201, MCA, of the Unfair Trade Practices Section of the Montana Insurance Code confers a private cause of action against the insurer, upon third party claimants. In the present case the claimant is alleging a failure of the duty to settle under subsection (6) of section 33-18-201, MCA.
Under Montana law the duty to settle has always been a fiduciary duty running from the insurer to the insured, by virtue of the insurance policy. Thompson v. State Farm Mutual Automobile Ins. Co. (1973), 161 Mont. 207, 505 P.2d 423, (and cases cited therein). However, we now must look to see if a cause of action is conferred upon third parties by this statute.
There are no decisions interpreting this code section and its effect in Montana. But, this issue has arisen in other jurisdictions with similar statutes. There is a split of authority in those jurisdictions as to whether such statutes do indeed confer a private right of action on third party claimants for breach of duty to settle; see Royal Globe Insurance Co. v. Superior Court of Butte County (1979), 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329. Kranzush v. Badger State Mutual Casualty Co. (1981), 103 Wis.2d 56, 307 N.W.2d 256; Scroggins v. Allstate Insurance Co. (1979), 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718, Jenkins v. J.C. Penney Casualty Insurance Co. (1981), W.Va., 280 S.E.2d 252; Tufts v. Madesco Investment Corp. (E.D.,Mo.1981), 524 F.Supp. 484.
We must now view our statute and construe it according *251 to our rules of statutory interpretation. These are best summarized in Montana Power v. Cremer (1979), 182 Mont. 277, 596 P.2d 483, where this Court stated:
“[t]he development of the case law of Montana with respect to the rules of statutory construction may be summarized by the following analysis. (1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain meaning of the language of the statute? (3) Is the interpretation reasonable so as to avoid absurd results? and (4) Has the agency charged with the interpretation of the statute placed a construction on the Statute? (citations omitted).” 596 P.2d 484.
Looking at section 33-18-201, MCA, as a whole, as is required when interpreting statutes, it seems relatively clear that third party claimants are protected. Although all the subsections don’t specifically refer to claimants, certain of them do. It would be absurd to assume that the legislature would insert these words into the statute without them having some meaning, as the legislature is presumed not to pass useless or meaningless legislation. State ex. rel. Dick Irvin Inc. v. Anderson (1974), 164 Mont. 513, 525 P.2d 564, 570.
The insertion of the word “claimant” in the statute evidences that such parties are owed an obligation or duty under that statute. When that obligation is viewed in conjunction with section 33-10-1004, MCA, which is the remedies provision of the Unfair Trade Practices Section of the Insurance Code, it is clear that a private cause of action can be maintained. Section 33-18-1004(5), MCA, provides:
“This section shall not be deemed to affect or prevent the imposition of any penalty provided by this code or by other law for violation of any other provision of this chapter, whether or not any such hearing is called or held or such desist order issued.” (Emphasis added.)
Based on the above subsection, it is evident that the insurance commissioner’s action is not the exclusive remedy for *252 an unfair trade practice violation. Therefore, a civil action may be maintained, because as section 27-1-104(1), MCA, aptly points out a civil action arises out of breach of an obligation. The intent of the legislature is clear; under section 33-18-201, MCA, an insurer has an obligation to claimants as well as insureds where unfair trade practices are concerned.
The third criteria of statutory interpretation is easily satisfied as no absurd result is arrived at by allowing a claimant to sue under the statute. Indeed the statute would have little effect on settlement of large claims if a contrary conclusion were reached.
The final step in interpreting the statute is to see if the agency in charge of administering the statute has placed any interpretation on it. Neither side in this case has called our attention to any such interpretation, nor has our research revealed any.
We therefore hold that section 33-18-201(6), MCA, does create an obligation running from the insurer to the claimant. When such an obligation is breached the claimant has the basis for a civil action.
However, at this point, we must differ with the position adopted by the other jurisdictions which allow an action such as this to be prosecuted only after the insured’s liability has been adjudicated. We believe that the action may be filed and tried before, concurrent with, or after liability has been determined. We see no problems with the possibility of contrary findings in the two actions, the doctrine of res judicata, collateral estoppel or the like because different issues are involved in the two cases. The issue in the action against the insurer for violation of the insurance code is simply an action to determine whether or not the insurer violated its duty of fair dealing in settlement negotiations with the claimant, while the action to determine the ultimate liability of the driver rests on considerations of negligence and comparative negligence.
The obligation to negotiate in good faith and to promptly *253 settle claims does not mean that liability has been determined. Section 33-18-203(6) states that the insurer’s obligation arises when liability has become “reasonably clear.” In evaluating the insurance case, the jury must determine whether the insurer negotiated in good faith given the facts it then had. This consideration is separate and apart from the jury’s ultimate consideration of the merits of any given action.
We have considered whether the result here reached contravenes the purpose of Rule 411, M.R.Evid., on the admissibility of insurance. The rule only prohibits the introduction of insurance where it is offered for the purpose of showing negligence or liability. Here, the issues to be tried are separate and the rule is not violated.
We realize that many will view this result as harsh. However, the legislature has reacted to what it perceives to be an important problem. Insurance companies have, and are able to exert, leverage against individual claimants because of the disparity in resource base. Justice delayed is often justice denied. Public policy calls for a meaningful solution. The legislature has spoken and we, by this decision, breathe life into the legislative product.
We must note, however, that the statute itself imposes limitations on the pursuit of any such action. We cannot ignore the ordinary plain meaning of the words in the statute; they are presumed to have their ordinary meaning. In Re Woodburns Estate (1954), 128 Mont. 145, 153, 273 P.2d 391. Therefore, the initial requirement, set out in the opening clause of section 33-18-201, MCA, of showing the lack of good faith in settlement negotiations or other unfair trade practices, to be general business practices of that particular company, must be met before an action may be successfully maintained. As was stated by the Court in Jenkins v. J. C. Penney Casualty Co., supra, it is possible that multiple violations occurring in the same claim could be sufficient to show a frequent business practice, as would violations by the same company in different cases. 280 S.E.2d at 260. *254 Proof of violations evidencing a general business practice, by the same company in different cases, can be obtained from other attorneys, claimants, or people having knowledge of the company’s general practice; Jenkins v. J. C. Penney Casualty Insurance Co., 280 S.E.2d at 260.
The judgment of the District Court is reversed and the cause is remanded for trial.
MR. CHIEF JUSTICE HASWELL and MR. JUSTICES HARRISON and SHEEHY concur.